UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DONAHUEFAVRET CONTRACTORS, INC.,  CIVIL ACTION

VERSUS  NO. 17-12019

US FRAMING INTERNATIONAL, LLC  SECTION A(2)

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 16)** filed by Plaintiff DonahueFavret Contractors, Inc. ("DonahueFavret"). Defendant US Framing International, LLC ("US Framing") opposes the motion (Rec. Doc. 21) and Plaintiff has replied. (Rec. Doc. 27). The motion, set for submission on July 25, 2018, is before the Court on the briefs without oral argument. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that Plaintiff's **Motion for Summary Judgment (Rec. Doc. 16)** is **DENIED** for the reasons set forth below.

**I.  Background**

This is an action by a general contractor, DonahueFavret, against a subcontractor, US Framing, to recover damages as a result of US Framing's failure to perform according to its bid of $2,282,000. (Rec. Doc. 16-8, pp. 9–12). DonahueFavret sought to be the general contractor for the SLU Student Housing Project (the "Project") owned by University Facilities, Inc. ("Owner") in Hammond, Louisiana. As part of its efforts to secure the bid as general contractor, DonahueFavret sought to acquire a proposal from US Framing to work as a subcontractor on the Project. (Rec. Doc. 16-4). On April, 11, 2017, DonahueFavret provided US Framing with a link to bid documents and informed US Framing that the bid date was May 10, 2017. On April 13,

2017 US Framing confirmed receipt of the link and assured DonahueFavret that it would submit its proposal on or before May 10, 2017.

On May 9, 2017, US Framing provided DonahurFavret with a proposal of $2,229,000 for providing work on the project. (Rec. Doc. 16-8, pp. 9–12). The proposal included a potential addition of $53,000 for US Framing to install windows that others would supply. *Id.* at p. 12. The proposal totaled $2,282,000. US Framing also submitted a bid to another general contractor, Landis Construction, on May 10, 2017, the day bidding closed on the project. (Rec. Doc. 16-9).

On May 10, 2017, DonahueFavret provided its bid to the Owner of the Project with US Framing's May 9, 2017 proposal factored into its bid. (Rec. Doc. 16). On May 11, 2017, DonahueFavret sent US Framing a copy of the draft subcontract between DonahueFavret and US Framing. (Rec. Doc. 16-11).[1] On that day, US Framing proposed using alternate designs and mechanisms for cutting costs on the project. DonahueFavret told US Framing that it would pass the suggestion along to the Project Architect and Engineer of Record.

On May 17, 2017, DonahueFavret sent a letter to US Framing, informing it that, assuming that DonahueFavret contracted with the Owner on the Project, Donahue Favret intended to subcontract with US Framing.[2] (Rec. Doc. 9). Thereafter, DonahueFavret instructed US Framing to start preparing the submittals and shop drawings for the Project. DonahueFavret and US

---

[1] US Framing asserts that the facts surrounding the transmission and requests concerning the execution of a draft subcontract agreement are in dispute. According to US Framing, on May 11, 2017, it requested a copy of the draft subcontract in an effort to be proactive. US Framing claims it wanted to review the document and start discussing changes in case a contract was ever going to be entered into between it and DonahueFavret. (Rec. Doc. 21-2, p. 2). According to US Framing, it was not the intent of the parties to execute a subcontract at that time. Rather, it was not until July 11, 2017, that DonahueFavret formally requested that US Framing return a signed subcontract, along with submittals and the schedule. *Id.*

[2] The content, timing, and significance of the Notice of Intent are in dispute. US Framing claims that on May 19, 2017, DonahueFavret sent US Framing an email entitled "SLU – Notice of Intent and New Vendor Packet." The letter attached to the email, dated May 17, stated: "Please be advised that provided we enter into a contract with the Owner for the above referenced project, it is our intention to award you a subcontract agreement." The letter went on to state: "In consideration of the above, we hereby request that you proceed immediately with all necessary submittal data . . . in order that they will be complete and ready for review as soon as the contract is signed." (Rec. Doc. 21-2, pp. 2–3).

Framing continued to correspond regarding US Framing's submittals and shop drawings. On May 22, 2017, DonahueFavret notified US Framing that the Project Architect did not intend to use the alternate designs proposed by US Framing, opting instead to maintain the design reflected in the bid documents. (Rec. Doc. 16-1).

On June 9, 2017, the relationship between the parties began to deteriorate when US Framing became dilatory in responding to DonahueFavret's request for information. Namely, US Framing had not yet provided DonahueFavret with its complete submittal package. On July 3, 2017, US Framing provided DonahueFavret with an incomplete submittal package. By July 7, 2017, DonahueFavret had still not received US Framing's complete submittal package. (Rec. Doc. 16-22). Employees of DonahueFavret consistently attempted to contact US Framing seeking the requested information provided in the submittal forms, but to no avail. By July 14, 2017, US Framing had still not responded. (Rec. Doc. 16-34).

On July 27, 2018, US Framing responded to DonahueFavret with an updated proposal in the amount of $2,573,200—a $344,200 increase over US Framing's May 9, 2017 $2,229,000 proposal. (Rec. Doc. 16-41). The parties scheduled a conference call for on or about July 31, 2017. (Rec. Doc. 16-43). The parties were unable to conduct the call. US Framing informed DonahueFavret that it was awaiting additional quotes and other information concerning the project.

By August 15, 2017, US Framing had not provided its submittals and was still attempting to avoid its prior proposal price on which DonahueFavret had relied. Therefore, to avoid any delays on the Project, DonahueFavret contracted with another contractor, KACCO, Inc. to perform the work. However, KACCO's price was $2,651,043—$369,043 higher than US Framing's original proposal. (Rec. Doc. 16-47).

3

DonahueFavret contends that from May 9, 2017, when US Framing provided its first proposal to DonahueFavret, to July 27, 2017, when US Framing sent DonahueFavret its revised proposal, neither US Framing nor its represenatives notified DonahueFavret or its representatives that US Framing would not honor its May 9, 2017 proposal and price or that US Framing would be submitting a revised proposal and price to DonahueFavret.

DonahueFavret additionally alleges that it relied on and incorporated US Framing's May 9, 2017 proposal and price in DonahueFavret's public bid to the Owner. DonahueFavret contends that it is customary and DonahueFavret's standard business practice to rely on proposals and prices from subcontractors and vendors when preparing and submitting its bids and proposals to project owners.

## II.     Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255).

Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### III. Law and Analysis

DonahueFavret brings the instant motion seeking summary judgment in its favor on its detrimental reliance claim against US Framing. DonahueFavret seeks to recover the difference between US Framing's bid of $2,282,000 and the amount DonahueFavret had to pay a replacement subcontractor when US Framing refused to perform under its bid. According to DonahueFavret, US Framing submitted a subcontractor price proposal to DonahueFavret on which US Framing knew DonahueFavret would rely and on which DonahueFavret did rely when it submitted its public bid as general contractor to the Owner on the public project at issue. According to US Framing, a genuine issue exists as to the material fact of whether DonahueFavret's reliance on US Framing's representation was reasonable. Before delving into each parties' arguments, a review of the applicable law is necessary.

The substantive law governing this action is Louisiana state law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Under *Erie*, this Court must first look to the final decisions of the Louisiana Supreme Court in order to determine the appropriate Louisiana law. *Howe v. Scottsdale Ins. Co.*, 204 F.2d 624, 627 (5th Cir. 2000) (citing *Labiche v. Legal Sec. Life Ins. Co.*, 31 F.3d 350, 351 (5th Cir. 1994)). If the Louisiana Supreme Court has not ruled on an issue, then a federal court must make an "*Erie* guess" to determine "as best it can" what the Louisiana Supreme Court would decide. *Id.* (quoting *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir. 1999)). In making an *Erie* guess in the absence of a ruling from the state's highest court, a federal court may look to the

5

decisions of intermediate appellate state courts for guidance. *Id.* (citing *Matheny v. Glenn Falls Ins. Co.*, 152 F.3d 348, 354 (5th Cir. 1998)).

According to Louisiana Civil Code article 1967, detrimental reliance is codified as follows:

Cause is the reason why a party obligates himself.

A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. Code art. 1967.

"Detrimental reliance requires (1) a representation by conduct or word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004); *see Suire v. Lafayette City–Parish Consol. Gov't*, 2004-1459, p. 31 (La. 4/12/05); 907 So.2d 37, 59. "Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract." *Suire*, 907 So.2d at 59. Indeed, detrimental reliance "usually functions when no written contract or an unenforceable contract exists between the parties." *Drs. Bethea, Moustoukas and Weaver LLC*, 376 F.3d at 403. "Rather, the existence of a promise and a reasonable reliance on that promise to one's detriment are the only requirements." *Percy J. Matherne Contractor, Inc. v. Grinnell Fire Protection Systems Co.*, 915 F.Supp. 818, 824 (M.D. La. 1995); *see also Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, No. 13-6789, 2015 WL 4392899, at *1 (E.D. La. July 17, 2015).

DonahueFavret moves for summary judgment on its detrimental reliance claim, arguing that the three elements of detrimental reliance are met pursuant to La. Civ. Code art. 1967. Specifically, DonahueFavret contends that "US Framing submitted its May 9, 2017 proposal and

price when submitting its public bid to University Facilities, but when US Framing refused to honor its proposal, DonahueFavret had to contract with another subcontractor at an increased price." (Rec. Doc. 16-1, pp. 14–15). DonahueFavret argues that once its bid was submitted to the Owner, any relevant time period for the detrimental reliance claim terminated.

In opposition, US Framing essentially concedes the first and third elements—that it made a representation to DonahueFavret by word or conduct, and DonahueFavret suffered a change in position to its detriment as a result of its reliance. (Rec. Doc. 21, p. 6) (stating, "It is the second element that DonahueFavret has failed to demonstrate here."). However, US Framing argues that DonahueFavret's reliance was unreasonable and therefore does not satisfy the second element of detrimental reliance. *Id.*

The Court agrees that a material issue of fact is in dispute. At the core of this Court's analysis is the second element of the detrimental reliance claim—whether DonahueFavret's reliance on US Framing's bid was reasonable. Whether a party reasonably relied on a representation is typically a question of fact. *Voelkel v. McWilliams Const., LLC v. 84 Lumber Co.*, No. 13-6789, 2015 WL 1184148, at *6 (Mar. 13, 2015). "Under Louisiana law, reasonableness is determined by examining factual circumstances, one of which is the commercial sophistication of the party asserting the claim." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007).

In *Voelkel*, Judge Fallon denied a similar motion brought by a plaintiff-general contractor seeking summary judgment on its detrimental reliance claim against a defendant-subcontractor. No. 13-6789, 2015 WL 1184148, p. 1 (E.D. Mar. 13, 2015). Judge Fallon noted, and this Court echoes, the following:

> A general contractor's reliance on a subcontractor's bid when the general contractor submits its bid for a project signifies the quintessential detrimental reliance case.

7

> As noted by one Louisiana Court, "those cases present classic facts suggesting the need for protecting the general contractor from a careless and sometimes reckless subcontractor who felt no responsibility for a bid that his general contractor had incorporated into an overall bid." *JCD Marketing Co. v. Bass Hotels and Resorts, Inc.*, 2001-1096, at *9–10 (La. App. 4 Cir. 3/6/02); 812 So.2d 834, 840.

*Id.* at *6.

*Voelkel* eventually went to trial. Judge Fallon analyzed the reasonableness requirement of the general contractor's detrimental reliance claim at both the summary judgment stage and at the post-trial motion stage via the subcontractor's motion for a judgment as a matter of law. Judge Fallon denied the general contractor's motion at the summary judgment stage based on his finding that a genuine dispute of material fact existed as to whether the general contractor's reliance on the subcontractor's initial bid was reasonable. At trial, the jury found the general contractor's reliance was reasonable, and Judge Fallon found no error with that decision at the post-trial motion stage. In analyzing the general contractor's motion for summary judgment, Judge Fallon found it relevant that the general contractor did not attempt to verify whether the subcontractor's plans and specification in its proposal were correct.

Judge Fallon referenced *Percy J. Matherne Contractor, Inc. v. Grinnell Fire Prot. Sys. Co.*, wherein a general contractor was granted summary judgment on its detrimental reliance claim against a subcontractor. 915 F.Supp. 818 (M.D. La. Aug. 9, 1995). In *Matherne*, the subcontractor submitted its proposal to the general contractor a few hours before the general contractor made its bid to the owner. The general contractor then called the subcontractor to discuss the scope of the proposal and to reaffirm that the subcontractor had factored in all addenda provided with the project plan. In analyzing the reasonableness requirement, the *Matherne* court found that the general contactor's reasonableness in relying on the subcontractor's bid was supported by the general contractor's "attempt to verify the bid before incorporating it." *Matherne*, 915 F. Supp. at

8

825; *see also Voelkel*, 2015 WL 1184148, at *3 ("The [*Matherne*] court recounted how the general contractor had made two phone calls prior to relying on the bid for the purpose of verifying whether the bid was correct, and the Court noted how the phone records corroborated this fact. . . . Moreover, the general contractor testified how the subcontractor's employee told the general contractor that the bid was correct and could be relied upon.").

In *Voelkel*, Judge Fallon found this distinction to be imperative. In *Voelkel*, unlike in *Matherne*, the general contractor did not call the subcontractor to verify whether the plans and specifications were correct. The general contractor in *Voelkel* incorporated the subcontractor's bid into its own proposal a mere three hours after receipt of the bid and waited until after submitting its bid to the owner to reach out to the subcontractor. Judge Fallon found that there was a disputed material fact as to whether the general contractor's reliance was reasonable when it incorporated the subcontractor's bid without verifying it prior to submission. *Voelkel*, 2015 WL 1184148, at *7.

Judge Fallon found that a jury could determine that the general contractor's reliance was reasonable based on industry practice and the expectation that a subcontractor submits its bid with the intention to be bound. *Id.* at *7. On the other hand, Judge Fallon found that the facts could support a finding that the general contractor's failure to adhere to the contract terms rendered "the reliance patently unreasonable." *Id.* (citing *Labarge Pipe & Steel Co. v. First Bank*, 550 F.3d 442, 464 (5th Cir. 2008)).

The same is true here. US Framing submitted its bid on May 9, 2017. On May 10, 2017, DonahueFavret provided its bid to the Owner for the Project, including and relying on US Framing's May 9, 2017 proposal. The facts do not evidence that DonahueFavret attempted to verify US Framing's bid before incorporating that bid into its own bid and sending it to the Owner

9

of the Project. Rather, the parties continued to negotiate differences in costs, materials, and price savings after DonahueFavret's bid to the Owner.

This is a close call. Although US Framing has a long road ahead of it, the Court does not find that summary judgment is warranted. The outcome of this case hinges on whether DonahueFavret's reliance was reasonable or unreasonable. Determining this issue requires a highly fact-intensive inquiry. Such intensively factual inquiries are suited for the trier-of-fact. The Court finds that there is a disputed material fact as to whether DonahueFavret's reliance was reasonable when it incorporated US Framing's bid. As a result, this Court denies DonahueFavret's Motion for Summary Judgment. (Rec. Doc. 16).

Accordingly;

IT IS ORDERED that DonahueFavret Contractors, Inc.'s **Motion for Summary Judgment (Rec. Doc. 16)** is **DENIED.**

August 14, 2018

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE